UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DOROTEO GOMEZ-ARGUETA and, REYNALDO VASQUEZ-GOMEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE ESTATE OF WILLIAM REED D/B/A REED'S REFORESTATION and D/B/A REED'S FORESTRY,<br><br>Defendant. | Civil Action No. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action for damages brought by two foreign guestworkers (the "Workers") from Guatemala who were employed by William Reed d/b/a Reed's Reforestation and d/b/a Reed's Forestry ("Reed") pursuant to the federal H-2B visa program in 2008 and 2009. This action is based on Reed's violations of the Workers' rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–1872 (hereinafter "AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (hereinafter "FLSA"), and the federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1589–1595 ("TVPA"). The Workers' FLSA claims are brought on behalf of themselves and all others similarly situated.

2. In 2008, Reed recruited the Workers from Guatemala for work in his forestry

*Plaintiffs' Original Complaint*  1

operations in Alabama and Mississippi. Reed and his agents utilized coercive techniques to secure the Workers' labor. At the time of recruitment, the Workers were forced to turn over the deeds to their land or homes as a condition of obtaining the job and as collateral to ensure that the Workers would not leave Reed's employment. The Workers were also promised certain terms and conditions of employment. In reliance on these promises, the Workers traveled from their homes and incurred substantial costs to obtain employment with Reed. Upon arrival in the United States, Reed confiscated the Workers' passports to ensure that the Workers could not leave employment, regardless of the circumstances. Moreover, once the Workers had arrived at the job, Reed failed to fulfill the promises made to the Workers at the time of recruitment and violated the Workers' rights with regard to their housing, transportation, and payment. Reed paid the Workers far below both the federal minimum wage and the higher prevailing wage promised by Reed, due both to the low piece rate at which the Workers were paid and to numerous illegal deductions from the Workers' pay.

3. The Workers seek money damages to redress these violations of the law.

## JURISDICTION

4. This Court has jurisdiction over the Workers' claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

5. The claims in this action are authorized and instituted pursuant to 29 U.S.C. § 1854(a), 29 U.S.C. § 216(b), and 18 U.S.C. § 1595(a).

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. This Court has personal jurisdiction over Defendant, and venue is proper in this district pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1854(a).

## PARTIES

8. Each of Plaintiffs Doroteo Gomez-Argueta and Reynaldo Vasquez-Gomez is a natural person and a citizen of Guatemala who was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) at all times relevant to this action during 2008 and 2009.

9. At all times relevant to this action, the Workers were "migrant agricultural workers" within the meaning of 29 U.S.C. § 1802(8)(A).

10. William Reed is a natural person who resided in Lawrence County, Mississippi.

11. On information and belief, William Reed passed away on or around July 28, 2009, and his estate is being or will be administered in Lawrence County, Mississippi.

12. On information and belief, William Reed did business as "Reed's Reforestation" and "Reed's Forestry," a sole proprietorship with its principal place of business in Lawrence County, Mississippi.

13. Defendant, the estate of William Reed d/b/a Reed's Reforestation and d/b/a Reed's Forestry, is liable to the full extent allowable by law for the actions and omissions of Reed before his death and relevant to the allegations set forth herein.

14. At all times relevant to this action, Reed was a "farm labor contractor" of the Workers within the meaning of 29 U.S.C. § 1802(6).

15. At all times relevant to this action, the Workers were each an "employee" of Reed within the meaning of 29 U.S.C. § 203(e).

16. At all times relevant to this action, Reed was each Worker's "employer" within the meaning of 29 U.S.C. § 203(d).

17. Pursuant to 29 U.S.C. § 216(b), the Workers seek to bring their FLSA minimum wage and overtime claims as a collective action on behalf of all similarly situated workers employed by Reed.

## STATEMENT OF FACTS

18. In 2008, Reed obtained H-2B visas from the U.S. government for the Workers and approximately 305 other foreign guestworkers to work for Reed's forestry operations in Alabama, Mississippi, and Louisiana.

19. In 2007, Reed obtained H-2B visas from the U.S. government for approximately 348 foreign guestworkers to work for Reed's forestry operations in Alabama, Mississippi, and, Louisiana.

20. In 2008, Reed recruited the Workers to work in his forestry operations.

21. The Workers are indigent Guatemalan nationals.

22. This recruitment took place in Guatemala, the Workers' permanent place of residence.

23. Reed recruited the Workers personally and through his agents, including Jose Alvarado-Castillo, also known as Reyner Ochoa.

24. At all times relevant to this action, Jose Alvarado-Castillo did not have a farm labor contractor certificate of registration issued by the U.S. Department of Labor (hereinafter "USDOL") authorizing him to recruit agricultural workers.

25. Reed's agent Jose Alvarado-Castillo required the Workers to turn over the deeds

to their land or homes as a condition of obtaining employment with Reed, and the deeds were not to be returned to the Workers until they completed the job with Reed.

26. Reed failed to take reasonable steps to determine that the person whom he utilized to supply him with migrant agricultural workers in 2008, namely Jose Alvarado-Castillo, had a certificate of registration issued by USDOL that authorized the activities for which Jose Alvarado-Castillo was utilized.

27. Reed offered, and the Workers accepted, agricultural employment at Reed's forestry operation in the fall of 2008.

28. Among other things, the working arrangements called for the Workers to leave their permanent places of residence in Guatemala and travel to Alabama and Mississippi to work for Reed.

29. In 2008, the Workers engaged in "agricultural employment" at Reed's forestry operations within the meaning of 29 U.S.C. § 1802(3), which consisted primarily of planting pine saplings.

30. During the course of their employment, the Workers were "employed" by Reed within the meaning of 29 U.S.C. § 203(g) and 29 U.S.C. § 1802(5).

31. At the time that Reed recruited the Workers, Reed failed to disclose in writing in English, Spanish, or Mam all terms and conditions of employment as required by the AWPA.

32. The Workers speak and read only Spanish or an indigenous language of Guatemala called Mam.

33. Reed knowingly provided false and misleading information to the Workers regarding the terms and conditions of their employment.

34. Reed knowingly provided the Workers with false or misleading information regarding, among other things, the Workers' rate of pay, the basis upon which they were paid, the terms of their payment, the amount of work they would receive, the quality of the work, conditions to obtaining employment, the circumstances under which the Workers could leave employment, and the basis for any sums withheld from their earnings.

35. The Workers agreed to employment with Reed based on the promises made to them at the time of recruitment about the terms and conditions of work. These promises related to, among other things, the amount of work to be offered, the quality of the work, and the wages to be paid or earned.

36. Around late November or early December of 2008, Reed caused the Workers to be transported from their permanent residences in Guatemala to Alabama and Mississippi to work for Reed's forestry operations.

37. To get to Reed's forestry operations in Alabama and Mississippi where they worked, the Workers and the other H-2B workers were required to pay various fees and expenses, including, but not limited to, recruitment fees, processing fees, visa fees, administrative fees, transportation expenses, and subsistence from their home towns in Guatemala to Mississippi.

38. The Workers had to obtain loans and went into debt to pay for the expenses described in paragraph 37 and leveraged what few assets they had just to obtain employment with Reed.

39. Reed did not pay the Workers and the other H-2B workers for the transportation and subsistence costs of returning to their homes in Guatemala after their work ended.

40. Reed did not reimburse the Workers and the other workers for the recruitment, processing, visa, administrative, and travel expenses described in paragraph 37 during the first workweek of each worker's respective year of work for Reed.

41. Reed did not reimburse the Workers and the other workers for the transportation expenses described in paragraph 39 during the last workweek of each worker's respective year of work for Reed.

42. Reed did not take the expenses set forth in paragraphs 37 and 39 into account in determining whether the Workers and the other H-2B workers earned at least the minimum wage or the prevailing wage rate during the relevant workweeks.

43. The recruitment, processing, visa, administrative, and transportation expenses described in paragraphs 37 and 39 were primarily for the benefit of Reed.

44. The recruitment, processing, visa, administrative, and transportation expenses set forth in paragraph 37 operated as *de facto* deductions from the wages of the Workers and other H-2B workers, causing them to earn less than the minimum wage during their first workweek.

45. The transportation expenses set forth in paragraph 39 operated as *de facto* deductions from the wages of the Workers and other H-2B workers, causing them to earn less than the minimum wage during the last workweek.

46. Reed, through his agents, confiscated the Workers' passports, which included the Workers' H-2B work visas, upon arrival in the United States and withheld those documents from the Workers during the duration of the Workers' employment with Reed.

47. During their employment, the Workers and other workers repeatedly requested from Reed and his agents that their passports be returned to them.

48.     Reed and his agents refused to return the passports to the Workers and the other workers, despite continued requests, and indicated that the workers' passports would be returned only after the last field had been planted at the end of the season.

49.     While withholding the Workers' passports from them, Reed and his agents threatened the Workers and the other workers with adverse immigration and work-related consequences.

50.     Specifically, Reed's agents threatened the Workers that if the Workers left, Reed or his agents would report the Workers to immigration authorities, that the immigration authorities would never believe the Workers' version of events, including the unlawful working conditions, and that the Workers would never be able to return or to work in the United States lawfully again.

51.     Reed withheld Workers' passports as a means of limiting their movement and of coercing their labor.

52.     During the course of his employment of the Workers, Reed caused the them to be transported by certain of his employees, including two supervisory employees named Fernando and Carlos.

53.     The Workers were transported by Reed's employees, including Carlos and Fernando, to the work site in Monticello, Mississippi upon arrival to the United States, from their housing in Mississippi to the work site in Alabama, and to and from their housing in Alabama and the various work sites.

54.     At all times relevant to this action, Fernando and Carlos did not have a farm labor contractor certificate of registration issued by USDOL.

55. The Workers were transported by Carlos and Fernando in several different vehicles.

56. Reed failed to take reasonable steps to determine that the persons whom he utilized to transport his migrant agricultural workers in 2008 and 2009, namely Carlos and Fernando, had a certificate of registration issued by USDOL that authorized the activities for which they were utilized.

57. During the course of their employment, the Workers were housed in housing owned or controlled by Reed.

58. At all times relevant to this action, Reed did not have a farm labor contractor certificate of registration issued by USDOL authorizing him to house migrant agricultural workers.

59. Reed housed the Workers at a location in or near Eutaw, Alabama and at a location in or near Monticello, Mississippi.

60. Reed failed to amend his certificate of registration whenever he intended to use or cause to be used a vehicle to transport agricultural workers or a housing facility to house migrant agricultural workers other than the one covered by his certificate of registration.

61. The housing in which Reed housed the Workers was not certified as meeting applicable health and safety standards by a state or local health authority or other appropriate agency, and Reed failed to post at the housing any such certification of occupancy.

62. This housing failed to meet the minimum safety and health standards specified under the AWPA and under applicable state and federal law.

63. Among other things, the housing provided by Reed lacked adequate kitchen

facilities, lacked adequate sleeping arrangements, lacked adequate space for the number of workers living there, and did not meet basic sanitation standards.

64. Reed failed to post at the housing the terms and conditions of occupancy in any language.

65. Reed failed to post in a conspicuous place a notice in any language at the Workers' place of employment setting forth their rights under the AWPA.

66. Reed failed to provide toilets, potable water, and handwashing facilities at the work site as required by federal sanitation standards.

67. While working for Reed, the Workers and other similarly situated workers were engaged in the production of goods for commerce as that phrase is used in the FLSA.

68. Reed paid the Workers by a piece rate for the number of saplings planted.

69. The Workers worked for Reed at various work sites planting saplings in the areas surrounding Eutaw, Alabama.

70. The Workers also traveled to storage units where they loaded and unloaded saplings and traveled substantial distances to the work sites, for which time Reed did not compensate the Workers.

71. Reed made numerous illegal deductions from the Workers' wages, including deductions for work-required equipment, housing, transportation, and "savings."

72. Reed held back part of the Workers' earnings as "savings" to purportedly be paid by Reed only when all work had been completed and at Reed's discretion.

73. Due to Reed's piece-rate payment scheme, failure to compensate the Workers for all hours worked, and illegal deductions from the Workers' pay, Reed did not pay the Workers

the federal minimum wage or the prevailing wage for each and every hour worked by the Workers in each discreet workweek.

74. The Workers regularly worked in excess of 40 hours in a given workweek.

75. Reed did not pay overtime to the Workers for any hours they worked in excess of 40 in a given workweek.

76. Reed did not pay the Workers their wages owed when due.

77. Reed's failure to pay the minimum wage and overtime was willful.

78. Reed did not provide the Workers with itemized pay statements as required by the AWPA or the FLSA.

79. The Workers at all times complied with the terms of the working arrangements.

80. Reed violated without justification the working arrangements with the Workers by not complying with all the terms and conditions of employment, including failure to pay the promised wage rate and failure to meet required field sanitation standards.

81. Taking into consideration the overall coercive nature of the employment with Reed and due to the fact that Reed held the deeds to the Workers' property, withheld the Workers' passports and visas, made threats to the Workers of immigration and employment consequences of failing to comply with Reed's demands, held back large portions of the Workers' wages owed, and generally controlled the Workers' access to housing, transportation, and income, the Workers were afraid to leave employment with Reed without their passports because they were reasonably fearful of the adverse immigration and employment consequences they could suffer if they left, including a fear of being deported or prohibited from ever returning to the United States.

82. Reed caused the Workers to believe that they could not leave their employment with Reed and that, if they did leave, they would suffer the consequences described in paragraph 81.

83. Although the conditions of the Workers' employment with Reed were intolerable and unlawful, the Workers feared leaving their employment with Reed without their passports and visas and thus continued to work for Reed.

84. The Workers were forced to continue working for Reed because of Reed's threats and the Workers' reasonable fears resulting therefrom of being deported or prohibited from ever returning to the United States.

85. Reed obtained the Workers' labor through coercion and by threats of serious harm, through a plan or scheme intended to cause the Workers to believe they would suffer serious harm, and through threatened abuse of law or the legal process.

86. Reed recruited the Workers and obtained the Workers' labor for his forestry operations in violation of the laws prohibiting forced labor.

87. The Workers suffered injury as a result of Reed's violation of the working arrangements.

88. All of the actions and omissions alleged herein were undertaken by Reed either directly or through his agents.

### FIRST CAUSE OF ACTION: MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

89. Reed intentionally violated the Workers' rights under the AWPA, inter alia, by:

   a. Engaging in farm labor contracting activity, particularly housing, without a

     certificate of registration from the Secretary of USDOL, 29 U.S.C. § 1811(a);

b.  Hiring, employing, or using an unregistered farm labor contractor and/or farm labor contractor employee to recruit, transport, and house the Workers, 29 U.S.C. § 1811(b);

c.  Failing to amend his certificate of registration whenever he intended to use or cause to be used a vehicle to transport agricultural workers or a housing facility to house migrant agricultural workers other than the one covered by the certificate, 29 U.S.C. § 1815(2)(b);

d.  Failing to provide required written disclosures at the time of the Workers' recruitment, 29 U.S.C. § 1821(a);

e.  Failing to provide and post all disclosures required by 29 U.S.C. § 1821 (a)-(c) in the Workers' language, 29 U.S.C. § 1821(g);

f.  Failing to post a notice at the place of employment setting forth the Workers' rights under the AWPA, 29 U.S.C. § 1821(b);

g.  Failing to provide each Worker with an itemized pay statement as required by the AWPA, 29 U.S.C. § 1821(d)(2);

h.  Knowingly providing false and misleading information to the Workers, 29 U.S.C. § 1821(f);

i.  Failing to pay wages owed when due, 29 U.S.C. § 1822(a);

j.  Requiring the Workers to purchase goods solely from the farm labor contractor, 29 U.S.C. § 1822(b);

    k.    Violating the terms of the working arrangement without justification, 29 U.S.C. § 1822(c);

    l.    Failing to ensure that housing provided to the Workers complied with federal and state safety and health standards, 29 U.S.C. § 1823(a);

    m.    Failing to have an appropriate federal, state, or local agency certify that housing met applicable safety and health standards for migrant agricultural workers, and failing to post the certification of compliance with federal and state health and safety standards for migrant agricultural workers, 29 U.S.C. § 1823(b)(1);

    n.    Failing to post at the housing site a statement showing the terms and conditions of occupancy, 29 U.S.C. § 1821(c);

    o.    Using a farm labor contractor without taking reasonable steps to determine that the farm labor contractor possessed a certificate of registration and which authorized the activity for which the contractor was utilized, 29 U.S.C. § 1842; and

    p.    Intimidating, threatening, restraining, and discriminating against the Workers for exercising their rights and protections under the AWPA, 29 U.S.C. § 1855.

90.    For each such violation of the AWPA, the Workers are entitled to recover their actual damages or up to $500 in statutory damages.

### SECOND CAUSE OF ACTION: FAIR LABOR STANDARDS ACT

91.    Reed failed to pay the Workers and other similarly situated workers the minimum

wage for their labor, in violation of 29 U.S.C. § 206.

92. Reed failed to pay the Workers and other similarly situated workers overtime for their labor in excess of 40 hours in each workweek, in violation of 29 U.S.C. § 207.

93. As a consequence of Reed's violations of their rights under the FLSA, the Workers and other similarly situated workers are entitled to their unpaid minimum wages and overtime, plus an additional equal amount in liquidated damages.

94. This cause of action is brought on behalf of the Workers and all other similarly situated workers.

95. The Workers have consented in writing to be party the Workers to this FLSA collective action. Their written consents are attached hereto as Ex. A.

96. The Workers are entitled to relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION: TRAFFICKING VICTIMS PROTECTION ACT—FORCED LABOR

97. This Count sets forth a claim for compensatory and punitive damages for Reed's violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589.

98. 18 U.S.C. § 1589 provides that it is unlawful to "obtain the labor or services of a person—(1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process."

99. In 2008 and 2009, Reed subjected the Workers to forced labor in violation of 18

U.S.C. § 1589.

100.    Reed knowingly attempted to and did threaten the Workers with serious harm in order to obtain the labor and services of the Workers in violation of 18 U.S.C. § 1589(1).

101.    Reed knowingly attempted to and did obtain the labor and services of the Workers in violation of 18 U.S.C. § 1589(2) using a scheme, plan, or pattern that was intended to coerce and did coerce the Workers to believe that they would suffer serious harm if they were to leave the employ of Reed.

102.    Reed threatened the Workers with immigration consequences and deceived the Workers about the terms of their visas in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(3).

103.    Pursuant to 18 U.S.C. § 1595, the Workers are entitled to recover damages for Reed's wrongful conduct.

### FOURTH CAUSE OF ACTION: TRAFFICKING VICTIMS PROTECTION ACT—TRAFFICKING

104.    This Count sets forth a claim for compensatory and punitive damages for Reed's violations of the TVPA, 18 U.S.C. § 1590.

105.    18 U.S.C. § 1590 provides that "whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter," including the laws prohibiting slavery, involuntary servitude, debt bondage, or forced labor, has engaged in unlawful behavior under the TVPA.

106.    In 2008 and 2009, Reed violated 18 U.S.C. § 1592 by removing, confiscating, or possessing the Workers' passports and other immigration documents in the course of and with

the intent to cause a violation of 18 U.S.C. § 1590.

107. In 2008 and 2009, Reed violated 18 U.S.C. § 1589 by recruiting, transporting, and obtaining the Workers' labor in violation of 18 U.S.C. § 1590's prohibition of forced labor.

108. Pursuant to 18 U.S.C. § 1595, the Workers are entitled to recover damages for Reed's violation of 18 U.S.C. § 1590.

## **PRAYER FOR RELIEF**

WHEREFORE, the Workers request that the Court grant them the following relief:

a. Enter a judgment in favor of the Workers on their AWPA claims as set forth in their First Cause of Action;

b. Allow this case to proceed as a FLSA collective action on behalf of similarly situated H-2B workers employed by Reed pursuant to 29 U.S.C. §216(b) and authorize the Workers to send notice to such workers of their right to opt-into this action;

c. Award the Workers their actual damages or, alternatively, statutory damages of $500 per person per violation for Reed's violations of the AWPA;

d. Enter a judgment in favor of the Workers on their FLSA claims as set forth in their Second Cause of Action;

e. Award the Workers their unpaid wages, plus an equal amount as liquidated damages, for Reed's violations of the FLSA;

f. Declare that Reed willfully violated the FLSA;

g. Enter judgment in favor of the Workers on their TVPA claims as set forth in the Third and Fourth Causes of Action;

h. Award the Workers declaratory, compensatory, and punitive damages for Reed's violations of the TVPA;

i. Award the Workers prejudgment and post judgment interest as allowed by law;

j. Award the Workers their reasonable expenses and costs of court; and

k. Award the Workers such other relief as this Court deems just and proper.

Respectfully submitted,

_____
Caitlin Berberich
*Pro Hac Vice Motion Forthcoming*
Tennessee BPR No. 025780
Stacie Jonas
Tennessee BPR No. 027334
*Pro Hac Vice Motion Forthcoming*
Douglas L. Stevick
Tennessee BPR No. 021711
*Pro Hac Vice Motion Forthcoming*
SOUTHERN MIGRANT LEGAL SERVICES
A PROJECT OF TEXAS RIOGRANDE LEGAL AID, INC.
311 Plus Park Blvd., Ste. 135
Nashville, Tennessee 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349



EXHIBIT A

## FLSA CONSENT FORM

I hereby give my consent to sue for wages that may be owed to me under the Fair Labor Standards Act. I hereby authorize my attorneys to represent me before any court or agency on these claims.

_____
NAME

_____
SIGNATURE

_____
DATE

*********************************************************************

## CONSENTIMIENTO PARA ACCIÓN FLSA

Por este medio doy mi consentimiento para que se haga demanda por pagos que me deben bajo la Ley de Normas Laborales Justas. Por el presente autorizo que mis abogados me representen ante cualquier corte o agencia tocante estos reclamos.

_Doroteo Gómez Argueta_
NOMBRES Y APELLIDOS

※ _[signature]_
FIRMA

_05/3/2009_
FECHA

# FLSA CONSENT FORM

I hereby give my consent to sue for wages that may be owed to me under the Fair Labor Standards Act. I hereby authorize my attorneys to represent me before any court or agency on these claims.

_____
NAME

_____
SIGNATURE

_____
DATE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CONSENTIMIENTO PARA ACCIÓN FLSA

Por este medio doy mi consentimiento para que se haga demanda por pagos que me deben bajo la Ley de Normas Laborales Justas. Por el presente autorizo que mis abogados me representen ante cualquier corte o agencia tocante estos reclamos.

Reynaldo Vásquez Gómez
NOMBRES Y APELLIDOS

*REYNALDO VAZQUEZ GOMEZ*
FIRMA

*MAR-23-2009*
FECHA